## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RONALD RODRIGUEZ-MIRANDA

    Plaintiff,

       v.                    CIVIL NO.: 15-2319 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

### OPINION AND ORDER

Pending before the court is Ronald Rodríguez-Miranda's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits.  Plaintiff—who applied for disability alleging disc herniation with stenosis, radiculopathy, dermatomal paresthesia, vertebrae spasms, peripheral polyneuropathy, chronic lower back pain, post-lower back decompression and infusion, lumbosacral syndrome, depression, and anxiety—contends that the administrative law judge erred in discounting the opinion of Dr. Héctor Vargas Soto, the treating physician, and in declining to transcribe illegible notes written by Dr. Vargas Soto.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

On December 22, 2011, Plaintiff filed an application for Social Security benefits alleging that on February 15, 2011 ("the onset date"), he became unable to work due to disability.  Tr. 447–49.[1]  Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Tr. 36.  Prior to becoming unable to work, Plaintiff worked as an aeronautical drafter, creating three-dimensional drawings of pieces of jet turbines.  Tr. 59.  The

---

[1] "Tr." refers to the transcript of the record of proceedings.

claim was denied on July 20, 2012, and upon reconsideration on March 20, 2013.  Tr. 359-62;

364–66.  Thereafter, Plaintiff requested a hearing, which was held on November 11, 2013, before

Administrative Law Judge Emily Ruth Statum (hereafter "the ALJ").  Tr. 50–79.  On March 17,

2014, the ALJ issued a written decision finding that Plaintiff was "not under a disability within

the meaning of the Social Security Act from February 15, 2011, through the date of this

decision."  Tr. 34.  Thereafter, Plaintiff requested review of the ALJ's decision.  Tr. 27.

Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision

the final decision of the Commissioner of Social Security, subject to judicial review.  Tr. 1–5.

Plaintiff filed a complaint on September 22, 2015.  ECF No. 1.  Both parties have filed

supporting memoranda.  ECF Nos. 17; 20.

## II.   LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether her factual

findings were founded upon sufficient evidence.  Specifically, the court "must examine the

record and uphold a final decision of the Commissioner denying benefits, unless the decision is

based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F.

Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76

F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id.  Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987).  An individual is deemed to be disabled under the Social

Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or

4

impairments do prevent him from performing his past relevant work, the analysis proceeds to step five.  At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

III.    THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 15, 2011.  Tr. 36.  At step two, the ALJ determined that Plaintiff "has the following severe impairments: disorder of the spine with S1 level radiculopathy and laminectomies, and depression."  Id.  At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id.  Next, the ALJ determined that Plaintiff,

> has the RFC to perform light work as defined in 20 CFR 404.1567(b), which would require lifting and/or carrying about 20 pounds occasionally and 10 pounds frequently, sitting about six hours in an 8-hour workday, and standing and/or walking about six hours in an 8-hour workday.  He has no limitations in pushing and/or pulling.  He can frequently climb ramps and stairs, balance, stoop or kneel.  He can frequently reach overhead.  He has an ability for unskilled simple routine work with a sit/stand option at will.

Tr. 39.  At step four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 42.  At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert.  The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of these representative occupations: cashier, fast food worker, and inspector hand

packager. Tr. 43. Because there is work in the national economy that Plaintiff can perform, the ALJ concluded that he is not disabled. Tr. 44.

IV.    ANALYSIS

Plaintiff challenges the ALJ's decision with regard to steps four and five of the sequential process. First, Plaintiff argues that the ALJ erroneously discounted the opinion of the treating physician, Dr. Vargas Soto, when determining Plaintiff's RFC. As a result, the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all of Plaintiff's limitations. Second, Plaintiff argues that the ALJ erred in declining to transcribe illegible notes written by Dr. Vargas Soto when determining Plaintiff's RFC.

1.    **Plaintiff's claim that the ALJ erroneously discounted the opinion of the treating physician.**

Plaintiff contends that the ALJ should have given more weight to the opinion of the treating physician, Dr. Vargas Soto, when determining Plaintiff's RFC. In her opinion, the ALJ stated that she

> accord[ed] no weight to the medical source statement provided by Héctor Vargas Soto, M.D., (Exhibit 5F) because it is conclusory, unsupported, and unexplained. Moreover, his medical source statement is based quite heavily on the claimant's subjective complaints, without sufficient objective information or clinical signs supporting his opinion. Dr. Vargas Soto also concluded that the claimant was limited to less than sedentary functioning due to his impairments (Exhibit 5F), but his medical source statement is not well supported and seems excessive in view of the rest of the medical evidence.

Tr 41.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufiño v. Comm'r of Soc. Sec.,

731 F. Supp. 2d 210, 216 (D.P.R. 2010).  Rather, the ALJ can give less weight to a treating

physician's opinion if she has good reason to do so.  Pagán-Figueroa v. Comm'r of Soc. Sec.,

623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F.

Supp. 2d 17, 25 (D.P.R. 2007)).  Specifically, the ALJ may disregard the treating physician's

opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is]

otherwise unsupported by the evidence."  Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218,

221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994)).  This

remains true regardless of whether the source of the evidence is a non-treating doctor.  Keating v.

Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y

of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

      Plaintiff argues that the reasons given by the ALJ for discounting Dr. Vargas Soto's

opinion are "vague," "not precise," and "inexplicit," and that it is unclear which evidence the

opinion refers to.  The court disagrees.

      First, in her opinion, the ALJ specifically stated that she accorded no weight to

Dr. Vargas Soto's medical source statement because it was unsupported by objective information

or clinical signs, but rather was based heavily on Plaintiff's subjective complaints.  Tr. 41.  An

examination of the record confirms this.  In response to one prompt, Dr. Vargas Soto did identify

positive objective signs, including reduced range of motion, abnormal gait, sensory loss, reflex

changes, tenderness, swelling, muscle spasm, muscle atrophy, muscle weakness, impaired

appetite or gastritis, weight change, and impaired sleep.  Tr. 555.  However, the rest of the 5-

page form Dr. Vargas Soto filled out prompted him to respond to questions based not on

objective medical tests and findings, but on Plaintiff's statements about the pain he felt.  Tr. 554-

558.  This constitutes substantial evidence which supports the ALJ's decision to discount

Dr. Vargas Soto's opinion.  See Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985).

Second, the ALJ also stated that she accorded no weight to Dr. Vargas Soto's conclusion that Plaintiff was limited to less than sedentary functioning because it seemed excessive in view of the rest of the medical evidence.  In his statement, Dr. Vargas Soto noted that in a competitive work situation, Plaintiff can occasionally lift and carry less than 10 pounds, rarely lift and carry 10 pounds, and never lift or carry 20 pounds or more.  Tr. 557.  He also stated that Plaintiff can rarely twist or climb stairs and never stoop, crouch, or climb ladders.  Id.  And during an 8-hour work day, according to Dr. Vargas Soto, Plaintiff can use his arms to reach overhead for a total amount of less than ten minutes.  Id.  The evidence in the record paints a different picture of Plaintiff's limitations.  On February 18, 2011, an examination showed normal motor strength of the bilateral upper and lower extremities.  Tr. 39.  Plaintiff had normal toe walk/heel walk testing, but had difficulty with "back range of motion" and with a straight leg raise test.  Id.  On July 6, 2012, a straight leg raise test performed on Plaintiff's right leg was positive at 60, and Plaintiff's gait was unassisted, meaning there was no foot drop or limping.  Tr. 40.  On September 25, 2013, a study revealed normal motor strength bilaterally in the lower extremities. Id.  Consistent with this medical evidence, state agency medical consultants Dr. Rafael Quiepo and Dr. Ulises Meléndez determined in their RFC capacity assessments that Plaintiff could do light work with frequent overhead reaching bilaterally.[2]  Dr. Quiepo and Dr. Meléndez found

---

[2] Plaintiff notes in his supporting memorandum that the ALJ cannot rely on raw medical evidence; rather, she must rely on physicians' opinions to translate that evidence into functional terms.  The Social Security regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Under this definition, Dr. Quiepo and Dr. Meléndez's RFC capacity assessments, in which they examined the evidence in the record and determined that Plaintiff could do light work with frequent overhead reaching bilaterally, do not constitute raw medical evidence.  See Rodríguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) (finding that the ALJ did not impermissibly assess RFC himself, but instead relied on the RFC assessment provided by the non-examining medical advisor); Valentín-Rodríguez v. Comm'r of Soc. Sec., No. 12-CV-1488 MEL, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014) (finding no indication that the ALJ interpreted raw data in determining a

that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds.
Tr. 335; 353.  They also stated that Plaintiff could frequently climb ramps or stairs and ladders,
ropes, or scaffolds, balance, and kneel, and occasionally crawl.  Tr. 335; 353-54.  Thus,
Dr. Vargas Soto's statement that Plaintiff was limited to less than sedentary functioning conflicts
with the rest of the evidence in the record, which constitutes a sufficient basis for the ALJ's
decision to disregard Dr. Vargas Soto's opinion.

      Plaintiff also contends that there was no contrary medical finding with regard to
Dr. Vargas Soto's conclusion that during an 8-hour work day, Plaintiff needs to walk every 30
minutes for 10 minutes.  Despite this, the ALJ did not describe the individual in the hypothetical
question it posed to the vocational expert as needing to walk every 30 minutes for 10 minutes.
This matters, Plaintiff argues, because when Plaintiff's attorney posed a hypothetical question to
the vocational expert featuring an individual who needed to walk every 30 minutes for 10
minutes, the vocational expert opined that the individual could not perform any job in the
national economy.  Thus, Plaintiff argues, had the ALJ posed a hypothetical question to the
vocational expert that accurately reflected this particular limitation, the ALJ would have
concluded that Plaintiff is disabled.  The claim that there was no contrary medical finding with
regard to Dr. Vargas Soto's conclusion that during an 8-hour work day, Plaintiff needs to walk
every 30 minutes for 10 minutes is simply incorrect.  In their assessments, both Dr. Quiepo and
Dr. Melendez determined that Plaintiff could sit, *with normal breaks*, for a total of about 6 hours
in an 8-hour work day.  Tr. 335; 353.  Further, the ALJ specified in her opinion that Plaintiff's
testimony was not fully credible.  Tr. 41.  Plaintiff testified that he could sit 10 minutes to half an
hour only, but sat through the hearing for almost 10 minutes without difficulty.  Id.  Plaintiff also

---

nuanced RFC for the plaintiff, instead of adopting completely either (1) the RFC determined by the agency doctors,
or (2) the RFC determined by the treating physician).

sat in a car for a car ride between Añasco and Río Grande, which is a considerable distance, and said that he drives to his appointments.  Id.  Thus, the ALJ was entitled to disregard Dr. Vargas Soto's conclusion, and was under no obligation to incorporate it into the hypothetical question she posed to the vocational expert.  See Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) ("It is well within the ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert.").

### 2. Plaintiff's claim that the ALJ erred in declining to transcribe illegible notes written by the treating physician.

Plaintiff contends that the ALJ should have transcribed illegible notes written by the treating physician, Dr. Vargas Soto.  The ALJ's failure to do so, Plaintiff argues, constitutes reversible error.

Even though claimants bear the burden of persuasion at step four, the ALJ still has a duty to develop a record on which reasonable conclusions may be based.  Roman-Traverzo v. Astrue, No. CIV. 12-1798 BJM, 2013 WL 3821620, at *4 (D.P.R. July 23, 2013) (citing Carrillo Marin v. Sec'y, 758 F.2d 14, 17 (1st Cir.1985)).  This remains true even when a claimant has a lawyer. Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993).  However, reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.  Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. 1998) (citing Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)).  In the matter at hand, Plaintiff argues that without Dr. Vargas Soto's notes dated February 22, 2011, which were written after performing back surgery on Plaintiff, it would have been impossible to assess Plaintiff's recovery from the surgery, and therefore to determine whether benefits should have been denied.  Even a cursory examination of the notes at issue refutes this theory.  To begin, Dr. Vargas Soto typed most of the information on the form, a case

discharge summary.[3]  Tr. 544.  The illegible information on the form consists of one-word

answers to the following prompts: principal diagnosis, diagnosis code, principal procedure, post-

discharge diet and medication, and follow-up appointment.  Id.  Knowing what doctor was

scheduled to treat Plaintiff after his surgery, as well as what type of diet and medication

Dr. Vargas Soto prescribed, hardly seems critical to determining Plaintiff's RFC.  See Onstad,

999 F.2d at 1234 ("Mr. Onstad says the record is not fully developed because some medical

records were not obtained.  For instance, the results of psychological testing performed by a

psychologist are not part of the record, but the expert's summary of that testing is. We are not

convinced that these results . . . would be important enough to make a difference in the

circumstances of this case.").  Further, information about Plaintiff's diagnosis was available to

both the ALJ and the state agency medical consultants via Dr. Vargas Soto's notes from

February 18, 2011, the contents of which were discussed at Plaintiff's hearing.  Tr. 53.  It should

also be noted that at no point did Plaintiff's counsel try to transcribe Dr. Vargas Soto's notes

herself, which suggests that these notes are not nearly as important as Plaintiff claims.  See

Shannon, 54 F.3d at 488; Onstad, 999 F.2d at 1234.

        In any event, the duty to develop a record on which reasonable conclusions may be based

does not fall on the ALJ alone.  Claimants also have an obligation: to produce all information

supportive of their claims.  Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (1st Cir.

1994) (citing 20 C.F.R. § 404.1512(a)).  It follows that when a claimant is represented, the ALJ

should "be entitled to rely on claimant's counsel to structure and present the claimant's case in a

---

[3] Plaintiff does not identify where in the voluminous trial record to locate Dr. Vargas Soto's notes.  There are two
possible contenders: a filled-in case discharge summary dated February 22, 2011, and a blank case discharge
summary that is illegibly dated and accompanied by a page of illegible notes.  The court has presumed that Plaintiff
is referring to the former.  However, even if Plaintiff were referring to the blank form, the court would still find that
it was not indispensable to determining Plaintiff's RFC, given all the other evidence in the record.

way that claimant's claims are adequately explored." <u>Faria</u>, 187 F.3d at 621 (citing <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167 (10th Cir.1997); <u>Sears v. Bowen</u>, 840 F.2d 394, 402 (7th Cir. 1988)).  Here, Plaintiff was represented by an attorney.  Plaintiff's attorney was afforded the opportunity to present her case, yet she neither tried to transcribe Dr. Vargas Soto's notes herself nor raised the issue of the notes to the ALJ.  The burden of resolving this issue rested with Plaintiff in this case, a burden which he never shouldered.  <u>See</u> <u>Johnson v. Comm'r, Soc. Sec. Admin.</u>, No. 13-CV-525-JL, 2015 WL 1119977, at *2 (D.N.H. Mar. 12, 2015) (finding that the plaintiff's attorney should have been the one ensuring that the medical records he presented in support of his client's claim were legible).

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of September, 2018.

<u>s/Marcos E. López</u>
U.S. Magistrate Judge